In re MODIFICATION OF CANON 3 A(7) OF the UTAH CODE OF JUDICIAL CONDUCT,

Petition of SOCIETY OF PROFESSIONAL JOURNALISTS, SIGMA DELTA CHI, UTAH CHAPTER, and Ernest J. Ford, Petitioners.

No. 16410.

Supreme Court of Utah.

April 27, 1981.

Randy L. Dryer, Salt Lake City, for petitioners.

F. John Hill, G. Fred Metos, Salt Lake City, for Salt Lake Legal Defenders Assoc.

Thornley K. Swan, Chief Judge, Utah Judicial Council, for Utah Judicial Council.

PER CURIAM:

The Utah Chapter of the Society of Professional Journalists, Sigma Delta Chi, a non-profit professional association of news reporters, editors, writers, and teachers of journalism (hereafter "the petitioners"), has petitioned the Court to modify Canon 3 A(7) of the Utah Code of Judicial Conduct [1] to permit the broadcasting, televising, recording, and taking of photographs during judicial proceedings. The Court has received the views of the petitioners, the Utah Judicial Council, the Utah State Bar, the Salt Lake County Bar, and the Salt Lake Legal Defenders Association, by briefs and in the hearing on this petition on November 20, 1979. The petition is denied except to the limited extent defined in this opinion and in the accompanying new Canon 3 A(8) dealing with still photography.

Television, broadcast, and photographic coverage of judicial proceedings has been the subject of a major national debate for almost a quarter-century. This debate has pitted the freedom of the press and the people's right to know against the litigants' (and the criminal defendants') due process right to a fair trial. Thus, the Society's petition urges that the ban in Canon 3 A(7) "unnecessarily impedes the accurate and fair coverage of the judicial branch." In seeking a change to permit television and news cameras and recorders in the courtroom, the petitioners submit that

[I]n light of the increasingly sophisticated technology available to the print and broadcast journalist the photographing and televising of judicial proceedings can be accomplished in a dignified and unobtrusive manner and poses no threat to the fair and impartial administration of justice.

The Utah State Bar and the Salt Lake County Bar supported petitioners' proposal of a one-year experiment with television, radio and photographic coverage in courtrooms.

---

1. Canon 3 A(7) of the Utah Code of Judicial Conduct, approved in 1974, provides:

A judge should prohibit broadcasting, televising, recording, or taking photographs in the courtroom and areas immediately adjacent thereto during sessions of court or recesses between sessions, except that a judge may authorize:

(a) the use of electronic or photographic means for the presentation of evidence, for the perpetuation of a record, or for other purposes of judicial administration;

(b) the broadcasting, televising, recording, or photographing of investitive, ceremonial, or naturalization proceedings;

(c) the photographic or electronic recording and reproduction of appropriate court proceedings.

Utah's Canon was modeled after the American Bar Association's Canon 3 A(7) (replacing Canon 35), adopted in 1972 by the ABA, except

Utah's Canon did not include restrictions imposed on Canon 3 A(7)(c) by provisions (i), (ii), (iii) and (iv) thereof, which read:

(i) the means of recording will not distract participants or impair the dignity of the proceedings;

(ii) the parties have consented, and the consent to being depicted or recorded has been obtained from each witness appearing in the recording and reproduction;

(iii) the reproduction will not be exhibited until after the proceeding has been exhausted; and

(iv) the reproduction will be exhibited only for instructional purposes in educational institutions.

Although Utah's Canon is less restrictive than the ABA model, the practice in Utah Courts has historically been one of overwhelmingly excluding cameras and broadcast equipment.

In opposition, the Salt Lake Legal Defenders Association argued that the use of electronic broadcast equipment would probably deny criminal defendants their rights to a fair trial and to the effective assistance of counsel as guaranteed by the Utah and United States Constitutions. The Utah Judicial Council opposed the petition for the same reason. Such opposition is based on concerns over the effect of the requested coverage on the participants in the trial, especially witnesses and jurors. For example, in the words of one opponent,

> In addition to compromising the dignity of the proceedings by creating a circus side show effect, there is a real danger that the presence of this gawking mechanism will divert the litigation from its proper course. Television introduces a new constituency into the trial which could seriously reduce the reliability of the fact-finding process.... Surveys have shown that people who lose their anonymity are more likely to yield their personal convictions for those which are more socially acceptable.... Television will enlarge the trial's audience enormously and will effectively destroy the natural solitude of most judicial proceedings.... [Television's] unexpected celebration [of the juror's identities] will have a severe impact upon their neutrality and independence.[2]

Freedom of the press and the right to a fair trial are among our most cherished values. Any tension between these values is therefore difficult to resolve. This difficulty is evident from the fact that about half of our sister states have now made some modification in the traditional rules forbidding television, broadcast and photographic coverage of courtroom proceedings, and about half have made no change.

The tension between these two values is also evident in the United States Supreme Court's most recent decision on this subject. *Chandler v. Florida*, —— U.S. ——, 101 S.Ct. 802, 66 L.Ed.2d 740 (1981), holds that the due process-fair trial guarantees of the United States Constitution do not bar still photographic, radio, and television coverage of criminal trials under all circumstances. States may authorize such coverage in some circumstances. The court's opinion acknowledges that "[a]ny criminal case that generates a great deal of publicity presents some risks that the publicity may compromise the right of the defendant to a fair trial," and stresses that "[t]rial courts must be especially vigilant to guard against any impairment of the defendant's right to a verdict based solely upon the evidence and the relevant law." 101 S.Ct. at 809. Being satisfied that the Florida amendment to Canon 3 A(7) established a mechanism to protect these interests and imposed upon trial judges "positive obligations to be on guard to protect the fundamental right of the accused to a fair trial," 101 S.Ct. at 811, the Court held that Florida's amended Canon 3 A(7) was not prohibited by the United States Constitution. The Supreme Court was careful to stress that its review was limited to determining whether there was "a showing of prejudice of constitutional dimensions" to the criminal defendants who complained of the news coverage in that case. Absent that prejudice, the court's opinion concludes, "there is no reason for this Court either to endorse or to invalidate Florida's experiment." 101 S.Ct. at 813.

The members of this Court are unanimously of the view that Canon 3 A(7)'s prohibition against televising, broadcasting or recording of judicial proceedings should be reaffirmed and that the petition for modification of those provisions should be denied. We are not satisfied that the balance between the interests of news reporting and the interests of a fair trial represented by Canon 3 A(7) would be improved by the proposed changes. Experiments under way in other states may yet suggest appropriate modifications to the Canon on this subject. But for the present, we remain unconvinced that change is warranted.

---

2. H. Fahringer, "Cameras in the Courtroom," *Trial*, Jan. 1981, p. 18–19. The arguments against television and broadcast coverage of judicial proceedings are ably summarized in T. Tongue & R. Lintott, 16 *Willamette L.Rev.* 777 (1980).

As to still photography, a majority of the members of this Court are persuaded that Canon 3 A(7) can be relaxed to enlarge the scope of news coverage without jeopardizing litigants' (and especially criminal defendants') right to a fair trial. The exercise of this privilege by the media will need to be watched carefully by trial and appellate judges. Experience with this expanded scope of coverage may provide the basis for further changes to expand or curtail coverage in the future.

Effective this date, Canon 3 A(7) of the Utah Code of Judicial Conduct is therefore amended, and the new Canon 3 A(8) is added, to read as follows:

## CANON 3

A. Adjudicative Responsibilities

\* \* \* \* \* \*

(7) A judge should prohibit broadcasting, televising, or recording in the courtroom and areas immediately adjacent thereto during sessions of court or recesses between sessions, except that a judge may authorize:

(a) the use of electronic or photographic means for the presentation of evidence, for the perpetuation of a record, or for other purposes of judicial administration; or

(b) the broadcasting, televising, recording, or photographing of investitive, ceremonial, or naturalization proceedings.[3]

(8) A judge should prohibit taking photographs (including motion picture and videotape) in the courtroom and areas immediately adjacent thereto during sessions of court or recesses between sessions, except that still photographs of the judge and other court personnel, counsel, spectators, parties and witness-es are permissible, subject to restrictions specified by the court and subject, in the case of parties and witnesses, to their advance consent in writing, provided that the court shall specifically forbid the taking of any photographs where it finds a substantial likelihood that such activity would jeopardize a fair hearing or trial in the matter at issue.

Subsection (c) of the Canon adopted in 1974 was eliminated to resolve the uncertainty it has sometimes caused.

The court's authority to specify some restrictions on the taking of still photographs may be exercised by local court rule applicable to all cases or by directions pertaining to individual cases or types of cases, or both. Such rules or directions would generally forbid the use of additional lights or flash bulbs, photographic equipment that would present a distracting appearance or noise, and any actions by photographers that would create a distraction from the proceedings for any of the participants, including judge, jury, counsel, parties and witnesses. To be permissible, photography must be unobtrusive. Where necessary to avoid distractions and keep the photography unobtrusive, the court could also limit the number of photographers in the courtroom to as few as one through pooling or other arrangements.

The provision for advance consent is intended to minimize the deterrence or constraint that the prospect of visual publicity may impose on parties or witnesses.[4] Jurors are entirely omitted from photography to eliminate the risk that their photographic depiction could jeopardize the fairness of their deliberations. The advance written consent of parties and witnesses should be obtained by the photographer or his repre-

---

3. Up to this point, the Canon is unchanged except for deleting the words "or taking photographs" in the first two lines. Subsection (c) is omitted.

4. In apparent and appropriate recognition of the importance of this principle, the modified Canon 3 A(7) proposed by the petitioners would have included this provision: "Notwithstanding the above, where a witness, juror or party expresses a prior objection to the presiding judge or justice, the court shall prohibit the photographing of said witness, juror or party and/or prohibit the broadcasting, televising or recording of the testimony of said witness, juror or party." We consider it preferable for the photographer to have the burden of securing approval rather than for the party or witness to have the burden of objecting.

sentative and deposited with the clerk (or other official designated by the court) before the photographs are taken.

If the court forbids taking any photographs in a given case, its findings supporting that order should be entered in the record.

This amendment to Canon 3 A(7) and this addition of Canon 3 A(8) are not intended to enlarge the legal rights or immunities or to reduce the legal responsibilities of the media or its representatives beyond the specific subject treated here. In all other respects, existing rules concerning public or media access to or publication of events happening during sessions of court or recesses between sessions remain unchanged by this action.

*It is so ordered.*