Petition of SOCIETY OF PROFESSION-
AL JOURNALISTS, SIGMA DELTA
CHI, UTAH CHAPTER, KUTV, Inc.,
KSL–TV, KTVX, KUED and KBYU,
Modification of Canon 3A(7) of the
Utah Code of Judicial Conduct.

No. 20269.

Supreme Court of Utah.

Oct. 8, 1986.

Patrick A. Shea, Randy L. Dryer, Salt
Lake City, for appellant.

David L. Wilkinson, Atty. Gen., Salt Lake
Legal Defenders, Pamela Greenwood, Bri-
an Florence, Salt Lake City, for respon-
dent.

ZIMMERMAN, Justice:

The Utah Chapter of the Society of Pro-
fessional Journalists, joined by several cor-
porate television and radio broadcasting en-
tities, seeks modification of Canon 3A(7) of
the Utah Code of Judicial Conduct to per-
mit broadcasting, televising, and recording
of judicial proceedings.[1] We are authoriz-
ing a one-year experiment to allow the tele-
vising, broadcasting, and recording of pro-
ceedings in the Utah Supreme Court. Fol-
lowing that experiment, we can better eval-
uate the impact of cameras in the court-
room and determine whether more exten-
sive coverage of judicial proceedings is
warranted.

This petition does not present the issue
of cameras in the courtroom for the first
time. Only five years ago, the petitioners
requested modification of Canon 3 A(7) to
allow still photography, television, and ra-
dio broadcasting of court proceedings. *See
In re Modification of Canon 3 A(7) of the
Utah Code of Judicial Conduct*, 628 P.2d
1292 (Utah 1981). As the Court noted
then, "Freedom of the press and the right
to a fair trial are among our most cher-
ished values. Any tension between these
values is therefore difficult to resolve."
*Id.* at 1293. In response to the petition, the
Canon was modified to permit still photog-
raphy, but the request for television broad-

---

1. The petition must necessarily include a modi-
fication of Canon 3 A(8). Canons 3 A(7) and 3
A(8) provide as follows:

(7) A judge should prohibit broadcasting, tele-
vising, or recording in the courtroom and
areas immediately adjacent thereto during
sessions of court or recesses between sessions,
except that a judge may authorize:
   (a) the use of electronic or photographic
means for the presentation of evidence, for
the perpetuation of a record, or for other
purposes of judicial administration; or
   (b) the broadcasting, televising, recording,
or photographing of investitive, ceremonial,
or naturalization proceedings.

(8) A judge should prohibit taking photo-
graphs (including motion picture and video-
tape) in the courtroom and areas immediately
adjacent thereto during sessions of court or
recesses between sessions, except that still
photographs of the judge and other court per-
sonnel, counsel, spectators, parties and wit-
nesses are permissible, subject to restrictions
specified by the court and subject, in the case
of parties and witnesses, to their advance con-
sent in writing, provided that the court shall
specifically forbid the taking of any photo-
graphs where it finds a substantial likelihood
that such activity would jeopardize a fair
hearing or trial in the matter at issue.

casting and recording of court proceedings was denied because it was not clear that the interests of a fair trial protected by Canon 3 A(7) would be improved by allowing such coverage. Nonetheless, the Court expressly held that "[e]xperiments underway in other states may yet suggest appropriate modifications to the Canon in this respect" and that "[e]xperience with [still photography] coverage may provide the basis for changes to expand or curtail coverage in the future." *Id.* at 1293–94.

In the present petition, the Society argues that more than three-quarters of our sister states permit some form of electronic coverage in their trial and/or appellate courts and that "[m]edia coverage of judicial proceedings has become the rule, rather than the exception."[2] Certainly, the decision of *Chandler v. Florida*, 449 U.S. 560, 101 S.Ct. 802, 66 L.Ed.2d 740 (1981), in which the Supreme Court held that cameras in the courtroom did not per se violate a litigant's due process rights, has fostered the acceptance of such media access. The Society has done an admirable job of collecting data concerning the effect of broad media access upon judicial proceedings in other states.[3] The studies are difficult to evaluate, however, largely because subjective judgment is necessarily involved in determining whether media coverage has affected judicial proceedings. For example, the Society has submitted copies of a study conducted in Arizona to measure participants' reactions to cameras in the courtroom which indicated that while nearly seventy percent of the jurors did not feel that the presence of a camera made them nervous during the proceedings, nearly forty percent felt that the presence of the media made them feel that the case was more important than others. *See* Raker, *Cameras and Recorders in Arizona's Trial Courts: An Evaluation of the Experiment* (undated) (attached as Exhibit B to petition). These statistics are open to differing interpretations. It is difficult to determine, for example, whether a juror who perceives that a case is "important" is more or less likely to convict a defendant in a criminal case or is likewise affected in a civil case. Moreover, even if the majority of jurors usually are unaffected by cameras in the courtroom, there is no way to determine in advance whether a particular jury will be composed of persons easily affected by such media coverage and whether substantial injustice could result.

The opposition to cameras in the courtroom generally emanates from a fear that the media will focus only on sensational cases and even then use only short excerpts that distort the proceedings, while those who favor extensive media coverage argue that the media is responsible and will present the balanced view and that better coverage by the most widely used news source—television—will contribute to better public understanding of the judicial process. We are not wholly convinced by either argument. Given the time constraints inherent in televising a news story, there will be little opportunity, as a practical matter, to educate the public. Nevertheless, if even limited television coverage helps the public to a better understanding of the judicial system, some good may be accomplished. Therefore, an experiment in broadcast media access is warranted.

Effective this date and continuing for a period of one year, the provisions of Canons 3 A(7) and 3 A(8) that prohibit "broadcasting, televising, or recording in the courtroom and areas immediately adjacent thereto during sessions of court or recesses between sessions" and prohibit "taking photographs (including motion picture and videotape)," respectively, are suspended with respect only to proceedings in this Court. Instead, televising, broadcasting, recording, and still photography shall be

---

2. The extent of coverage permitted varies widely. Delaware, Idaho, Illinois, Maine, Nebraska, New York, North Dakota, Oregon, Texas, Vermont, and Wyoming permit coverage of appellate proceedings only.

3. Unfortunately, the Society has failed to produce any analysis of whether the addition of Canon 3 A(8) to the Utah Rules of Judicial Conduct has had any effect upon participants in judicial proceedings in Utah.

permitted in this Court in accordance with the guidelines attached as Appendix A.[4] During the experimental period, the provisions of Canons 3 A(7) and 3 A(8) shall remain in full force and effect with respect to all other judicial proceedings. At the end of the experimental period, this Court will reconsider the Society's petition for more extensive coverage.

It is so ordered.

HOWE, J., concurs.

DURHAM, Justice (concurring):

I agree generally with the Court's opinion, but believe that the guidelines should be extended now to permit a period of experimentation in the trial courts as well as in this Court. The information we obtain on the effect of cameras in our courtroom is highly unlikely, in my view, to tell us anything useful about their potential effect on trial proceedings. Nothing in the Court's rationale militates against a carefully constructed experiment in that forum.

HALL, Chief Justice (dissenting):

I do not join the Court in conducting yet another experiment to ascertain whether cameras in the courtroom will enhance the fair and impartial administration of justice. In fact, the numerous experiments that have been conducted in other jurisdictions fail to support a conclusion that televising, broadcasting, or recording judicial proceedings in any way serves the interests of justice. Rather, such activity compromises the dignity of judicial proceedings and endangers the integrity of the system and the participants therein.

STEWART, J., concurs in the dissenting opinion of HALL, C.J.

## Appendix A

### GUIDELINES FOR EXPERIMENTAL USE OF CAMERAS IN THE UTAH SUPREME COURT

(1) Nothing in these guidelines is intended to restrict the right of the media to report on proceedings as previously authorized by Canons 3A(7) and 3A(8) of the Utah Code of Judicial Conduct.

(2) Nothing in these guidelines limits or restricts the power of the Chief Justice to control the conduct of the proceedings before the Supreme Court. The Chief Justice, after consultation with the members of the Court, shall have authority to impose conditions and limitations in addition to those enumerated in these guidelines if necessary to preserve the orderly administration of justice in individual cases. The Chief Justice also shall have authority, after consultation with the members of the Court, to prohibit the media coverage authorized in these guidelines where necessary to preserve the orderly administration of justice. If it is determined that media access should be denied, written findings in support of that decision will be issued.

(3) Upon the failure of any media representative to comply with the limitations prescribed in these guidelines or imposed by the Chief Justice, that individual's permission to broadcast, film, tape, record, or photograph the proceedings may be revoked. In addition, the authorization to broadcast, film, tape, record, or photograph proceedings may be revoked at any time without prior notice when it appears to the Court that actions of the media are interfering in any way with the proper administration of justice.

(4) The law generally applicable to inclusion or exclusion of the press or public at court proceedings shall apply to the coverage authorized by these guidelines.

(5) At least forty-eight hours' prior written notice requesting media access shall be given to the Court, unless good cause exists to justify shorter notice. The court clerk shall notify all parties of the request. If a party objects to coverage, the Court shall consider such objections in determin-

---

**4.** These guidelines conform generally to those in other states permitting appellate coverage only. See footnote 2, supra. The guidelines are tailored to appellate court proceedings. Should the Court later decide to extend the experiment to lower courts, the guidelines will need substantial revisions.

ing whether media coverage shall be permitted.

(6) No photographic, film, videotape, or audio reproduction of a judicial proceeding shall be admissible as evidence in any retrial or other subsequent or collateral proceeding.

(7) No more than one television camera or motion picture camera mounted on a tripod, with a single camera operator, shall be permitted in the courtroom for coverage at any time while court is in session. The broadcast media, through a media committee or spokesperson as noted in paragraph 8, shall select a representative to arrange the pooling of media participants. The Court shall not participate in the pooling agreement.

(8) Where necessary to facilitate pooling and technical procedures, it shall be the responsibility of the media to form a media committee or designate a spokesperson to be solely responsible for settling disputes among media representatives and establishing pooling procedures that meet the approval of the Court prior to any coverage.

(9) With the assistance of the media committee or its spokesperson, the Chief Justice, after consultation with members of the Court, shall designate the placement of equipment and personnel for electronic coverage of a judicial proceeding, and all equipment and personnel will be restricted to the area so designated. All equipment must be in place and tested at least fifteen minutes before the day's proceedings begin. Wiring shall not be obtrusive or cause inconvenience or hazard. While court is in session, equipment shall not be installed, moved, or taken from the courtroom.

(10) Individual journalists may use their personal audio recorders in the courtroom, but such usage shall not be distracting, and changes of tapes or reels during court sessions shall be made with the least possible distraction.

(11) Television cameras and microphones used in the coverage permitted hereunder shall comply with the "state of the art."

Cameras and microphones shall be deemed to meet the "state of the art" when equal in unobtrusiveness, technical quality, and sensitivity to equipment in general usage by the major broadcast stations in Salt Lake City, Utah.

(12) All media persons covering the proceedings shall avoid conduct or dress that may detract from the dignity of the proceedings.

(13) If necessary, the media shall supply microphones, additional lighting, and other equipment for audio and visual coverage at its own expense. Installation of such equipment shall be subject to the approval of the Court.